**In re Jack K. KERSHAW, Mary N. Kershaw, Debtors.**

**Bankruptcy No. 383–00432.**

United States Bankruptcy Court, M.D. Tennessee.

March 21, 1986.

## ORDER

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the debtors' motion to "strike Trustee's attorney's 'Application for Interim Compensation and Reimbursement of Expenses' and all motions to invoke sanctions, for the reason that employment of special counsel and imposition of sanctions is an un-necessary and a needless burden on the Estate [sic]."

This case was filed by the debtors as a Chapter 13 on February 11, 1983. Although the debtors were ordered to make payments to the Chapter 13 trustee in the amount of $3,800.00 per month, no funds were ever paid according to the Chapter 13 trustee's Final Report and Account. On August 11, 1983, the case was converted to one under Chapter 11. On March 14, 1984, the court appointed Margaret L. Behm trustee. On September 17, 1985, the case was converted to one under Chapter 7 and

the court ordered the Chapter 11 Trustee to continue as the Chapter 7 Trustee.

This case was a Chapter 11 case for over 25 months. It was, or should have been, a garden variety Chapter 11 case. It is also a garden variety business or personal Chapter 7 case. In bankruptcy parlance it is a "single asset" case with land being the primary asset of the debtors. There are only approximately twenty creditors. Chapter 11 cases often have numerous assets, involve ongoing and oftentimes sophisticated and complex businesses, and, usually have far more creditors than twenty. Some have hundreds or thousands of creditors.

One of the debtors, Jack Kershaw, is an attorney. At times he has represented himself and his wife. Three other attorneys have served as debtors' counsel and his current counsel, Lucien Dale, is seeking to withdraw at this time.

In 1983, 3,543 cases were filed in this court of which 2,545 were Chapter 7, 120 were Chapter 11, and 878 were Chapter 13. In 1984, 3,347 cases were filed, of which 1,866 were Chapter 7, 107 were Chapter 11, and 1,374 were Chapter 13. In 1985, 4,230 cases were filed, of which 1,887 were Chapter 7, 145 were Chapter 11, and 2,198 were Chapter 13. In January and February, 1986, 905 cases were filed of which 396 were Chapter 7, 15 were Chapter 11, and 494 were Chapter 13. This is a total of 12,025 cases. Further, 1,657 adversary proceedings were filed during these same periods. At this time there are 6,845 cases pending before the court. This latter figure does not include adversary proceedings.

The court can without a doubt opine that during the years this case has been pending it has occupied far more attorney and court time than any other case its size and probably more than any case regardless of size. Most of this effort was unnecessary and it has succeeded in delaying any payments to creditors during its Chapter 13, Chapter 11, or Chapter 7 existences. It is by far the best example this court has seen during its four and one-half years on the bench of debtors using the bankruptcy process to delay and obfuscate in order to keep their property from the reach of their creditors.

This case has spawned three adversary proceedings (385–0035, 385–0265 and 386–0010), all directed against the trustee.

This case has generated seven appeals by the debtors, of which two have been dismissed by the District Court. The docket sheet shows approximately 236 entries in addition to 63 certificates of mailing.

The first adversary proceeding filed against the trustee (385–0035) has generated six more appeals by the debtors to the District Court, of which at least two have already been dismissed. Its docket sheet reflects approximately 75 entries and 17 certificates of mailing.

The second adversary proceeding filed against the trustee (385–0265) has generated one additional appeal and approximately 18 docket entries and four certificates of mailing.

The last adversary proceeding filed against the trustee, at least to the date of this order, (386–0010) has not yet generated an appeal by the debtors. However, since the court has dismissed it for the failure of debtors' counsel to appear at a court-ordered pretrial conference, the court assumes that one will be forthcoming.

This court can now fully sympathize with the Honorable Merritt S. Deitz, Jr. of the Western District of Kentucky when he described a similar case as follows:

> We will not belabor the reader with a further description of what we have already identified as tactics "to delay, obfuscate and abuse" the bankruptcy process. The job is too great. The docket sheet lists 313 separate pleadings, ballots, memoranda and orders; some of the legal memoranda are themselves weighty tomes. The file is entering its seventh volume. Like an ill-healing chancre that continues to reopen, the Chou-Chen case demanded continuous treatment while 250 other Chapter 11 petitioners awaited our ministration; the case has been in

court for eleven separate hearings, most of them lengthy. It has generated three appeals. We have every reason to believe it will produce yet a fourth.

\* \* \* \* \* \*

At length the judge cried, quite out of breath, "I will give you your life if you will only stop fiddling."

*In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842 at 846 (Bankr.W.D.Ky.1983), *quoting The Jew Among Thorns*, The Brothers Grimm (1837).

This court further suspects the situation of the trustee in this case is like that of the trustee in the *Chou-Chen* case who was described by Judge Deitz as "probably feeling as though he had been dropped squarely in the middle of a Bosch triptych". *Id.*

Before analyzing the one-page writing before the court which is denominated a "Motion to Strike" and its attached Memorandum, the court must note a remarkable phenomenon on its face. It contains two different signatures for the counsel for the debtors. Bankruptcy Rule 9011 requires that a Motion shall be signed by an attorney of record in his individual name and sets out the significance of that signature. In this case the debtors' attorney apparently only signed the certificate of service and someone else signed his name to the Motion. The court will assume it was signed with his permission although there is no indication of this.

This writing purports, first of all, to request the striking of "Trustee's attorney's 'Application for Interim Compensation and Reimbursement of Expenses'." It was filed the day before a Motion for Interim Compensation and Reimbursement of Expenses filed by the attorneys for the trustee was to be heard. Assuming this writing was filed in opposition to the request set the next day, the court notes that the following exchange subsequently occurred in open court in regards to this fee request:

BY THE COURT: Any objection, Mr. Dale?

BY MR. DALE: No objections, may it please the court.

Although debtors' counsel apparently thought it was necessary to move the court to "Strike" this request, he did not find it necessary to object to it. It is possible, however, that another interim fee request is referred to since the Memorandum addresses a previous request.

The writing also refers to "all motions to invoke sanctions, for the reason that employment of special counsel and imposition of sanctions is an unnecessary and a needless burden on the Estate." The court is not sure what this refers to and will attempt to ascertain it through analysis of the attached Memorandum. There is no way to determine what is meant in regards to "special counsel" since nothing in the Memorandum refers to this. However, prior to reviewing the Memorandum a much more fundamental issue must be addressed and that is counsel's use of a "Motion to Strike" in these circumstances.

■ Bankruptcy Rule 7012 incorporates FED.R.CIV.P.12(f). A motion to "strike" under Rule 12(f) only pertains to the striking of material contained in a *pleading.* Nothing in the body of this writing refers to a pleading. For this alone the court would find that Bankruptcy Rule 9011 has been violated because a reasonable inquiry into existing law would show that a motion to strike was not applicable to what counsel attempts to do.

■ Turning to the attached Memorandum, the court finds on page two what purports to be a recitation of FED.R.CIV. P.11. However, a comparison of this to Rule 11 will reveal that this is a misrepresentation. The language quoted was discarded from a prior Rule 11 three years ago. This failure of debtors' counsel to be aware of existing law, his filing of a motion predicated on an obsolete rule, and his basing his legal arguments in the Memorandum on the obsolete rule are each adequate grounds to impose sanctions under Bankruptcy Rule 9011.

At the bottom of page two of the Memorandum, counsel refers to something "in the instant case" in regards to a June 10,

1985, order. The court can only assume that counsel attempts through a "Motion to Strike" to obtain non-appellate review of a nine month old order which is either final or on appeal at this time. Such a preposterous contention, in and of itself, would require the imposition of sanctions pursuant to Bankruptcy Rule 9011.

On page four, reference is made to "the case at bar" regarding a September 17, 1985, order imposing sanctions. Attempts to review this order are in the same category as the June 10, 1985, order and, in and of itself, would require the court to impose sanctions pursuant to Bankruptcy Rule 9011.

Further reference is made in the same paragraph to a September 17, 1985 order awarding interim compensation to the Trustee's attorney. The court assumes that counsel intended the writing to request review of this September 17 interim compensation order. That request, in and of itself, is enough to impose sanctions under Bankruptcy Rule 9011, since that order is not a pleading and was entered six months ago.

Also on page four, reference is made to an order of October 25, 1985, in adversary proceeding 385–0265. This "Motion to Strike" is filed in the *case* and not in that *adversary proceeding*. The basic misunderstanding of debtors' counsel that matters in the adversary proceeding can be addressed in the case is, in and of itself, reason for imposition of sanctions pursuant to Bankruptcy Rule 9011. Further, his complaint appears to be based on debtors' counsel's reliance on former Rule 11, which was rewritten three years ago.

In the middle of page four, debtors' counsel again addresses adversary proceeding 385–0265 in his apparent misunderstanding as to separate identities of cases and adversary proceedings.

On page five, debtors' counsel refers to "the cases before us today" which is nonsensical. The only matter before the court is a "Motion to Strike" in the Chapter 7 case and not the adversary proceedings. This again is, in and of itself, a ground to

assess sanctions pursuant to Bankruptcy Rule 9011.

The obtuseness of this Memorandum is typified by the following paragraphs from page six:

On December 9, 1985 debtor filed a "Motion to Invoke Sanctions" and requested that Trustee be specific in her charges of "frivolity." (Which see)

Lacking specifics debtor respectfully asserts that debtor and his counsel be awarded sanctions and such sanctions as have been imposed on them be struck.

Once again debtors' counsel appears to be asking on behalf of a singular debtor that the previous sanctions in the case which are either final or on appeal "be struck" in this motion.

On page nine counsel again complains of the court's conversion of the debtors' case to one under Chapter 7, because it precludes any "rehabilitation" of the debtors. This is not a matter for a motion to strike and addressing it as such would be a ground, in and of itself, for sanctions pursuant to Bankruptcy Rule 9011. The court finds it remarkable that the debtors complain about not being able to rehabilitate a "business" when they were allegedly unable to pay any sums to a Chapter 13 trustee and were allegedly unable, because of lack of funds, to pay any sanctions ordered by this court. This complaint about the conversion order, which is either final or on appeal in the District Court, begins on page eight and continues to page nine.

Again on page nine, the debtors' counsel mixes apples and oranges in requesting relief in adversary proceedings 385–0035 and 385–0265.

On page eleven, the debtors' counsel talks about "the case at bar" and the "adversary proceeding filed in this cause" in continued confusion as to the case and the adversary proceedings. However, counsel refers to the adversary proceeding in the singular, and the court cannot determine which one he is referring to in that paragraph. In the next paragraph counsel refers to "complaints" in the plural, which

could refer to any one of the three adversary proceedings filed against the Trustee.

On page twelve, there is reference to some procedure "in the instant *case* [emphasis added]" to "first impose sanctions sua sponte, if necessary, and without a hearing and then entertain favorably a Motion to Dismiss" which is "tantamount to striking in the first place." This is as abstruse and abstract in the context of a "Motion to Strike" as is the remainder of the Memorandum.

On July 9, 1985, the court entered an order in the case referring to the protraction of the case by the debtors and their continued abuse of the legal system. This court concluded at that time that a motion of the debtors was based on a misrepresentation to the court and was frivolous. However, the court took no action against the debtors while recognizing in retrospect it should have imposed sanctions under Bankruptcy Rule 9011. The order concluded with a warning that if the debtors filed any further frivolous motions the court would not hesitate to assess sanctions under Bankruptcy Rule 9011. This order is attached hereto. (Appendix A).

On July 31, 1985, an order was entered in adversary proceeding 385–0035 which described the debtors' actions in regard to the trustee. These are symptomatic of the actions of the debtors throughout this case and its adversary proceedings. This order is also attached hereto. (Appendix B).

On the basis of a review of the "Motion to Strike" and the accompanying Memorandum, the court is ORDERING sanctions against the debtors and their counsel for any time expended by the trustee in reviewing and investigating this writing. Trustee's counsel shall submit an affidavit along with an appropriate order if this has occurred. Further, as an additional sanction, a fine in the amount of $1,500.00 will be imposed, jointly and severally, against the debtors and their counsel, Lucien Dale, pursuant to Bankruptcy Rule 9011. While it is doubtful at this time that the court would reconsider this fine, if this case reaches a conclusion without any further dilatory, frivolous, groundless, or obfuscating actions on the part of the debtors, the court will be amenable to such a request.

IT IS THEREFORE SO ORDERED.

## APPENDIX A

IN RE: JOHN K. KERSHAW and MARY N. KERSHAW, Debtors

JOHN K. KERSHAW and MARY N. KERSHAW, Plaintiffs,

Vs.

MARGARET L. BEHM, TRUSTEE, Defendant.

Bankruptcy No. 383–00432.

Adv. No. 385–0035.

### ORDER

This matter is before the court on a motion filed by the debtors seeking leave to appeal this court's June 10, 1985 order denying consolidation of a final turnover order of this court with a pending adversary proceeding. Debtors' original motion to consolidate was unfounded and frivolous and this motion for leave to appeal that frivolous motion is likewise. The debtors' motion for leave to appeal is DENIED.

The history of this matter is protracted, due to the debtors' continued abuse of the legal system in an attempt to avoid complying with this court's February 5, 1985 order. On February 5, 1985, this court ordered the debtors to turn over "all monies derived from land and/or real estate contracts in which the debtors have an interest since the appointment of the trustee, and a complete accounting of the same shall be turned over to the trustee on February 5, 1985." The court also ordered that the debtors should turn over by February 15, 1985, (i) all paperwork which evidences any transfer of property within one year of the filing of the petition for relief; (ii) a copy of the debtors' 1982 and 1983 tax returns; (iii) all bank statements of the debtors from February 1982 to the present; (iv) all trust instruments which involve the debtors and also documentation in the debtors' posses-

sion regarding the trust; and, (v) a new statement of affairs which outlines transactions within the past two years and new schedules. Whether a trustee should have possession of assets and records of an estate is obvious to anyone with common sense and required by law. *See* 11 U.S.C. § 521(2) and (3) (West 1979).

On February 12, 1985, the court heard argument on the debtors' motion to set aside the court's order of February 5 and denied said motion. On February 22, 1985, the debtors filed a Rule 59 motion for a new trial or, in the alternative, an amended order. The motion stated, in essence, that the motion for turnover should be reheard due to the fact that the debtor filed an adversary action seeking to remove the Chapter 11 trustee. That motion was denied.

On March 18, 1985, the debtors appealed this court's order denying a new trial or amended order and this court's order refusing to set aside the court's previous turnover order rendered on February 5, 1985. On March 26, 1985, the debtors filed a motion seeking a stay of this court's turnover order entered on February 14, 1985, the court's refusal to vacate the February 14th order entered on February 28, 1985, and the court's denial of the debtors' motion for a new trial or amended order. The court denied the debtors' motion for stay on April 8, 1985. On April 30, 1985, the District Court dismissed the debtors' appeal.

On April 12, 1985, the debtors filed a motion to consolidate the motion for turnover, then on appeal *in the district court,* with a pending adversary proceeding the debtors had filed against the trustee, which was pending *in the bankruptcy court.* This court is incredulous that the debtors would expect the bankruptcy judge to order the district judge to hear an adversary proceeding with an interlocutory appeal or, even more ludicrous, to order the district judge to return the interlocutory appeal to the bankruptcy court for consideration with the adversary proceeding. The motion was based on a misrepresentation to the court

that proceedings were pending in the turnover action which could be consolidated with the existing adversary proceeding. In fact, the turnover motion had been decided by this court on February 5, 1985, which order the debtors had attempted to abbrogate by filing three postjudgment motions and an appeal. The motions, as well as the appeal, were all denied. At the time the consolidation motion was heard by the court, no further proceedings were pending concerning the turnover order in this court or in the district court. Although the consolidation motion was based on a misrepresentation to the court and was viewed by the court as frivolous, the court took no action against the debtors or their attorney except dismissal of their motion. In retrospect, the court should have imposed sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure.

The debtors' attempt to appeal the court's denial of their motion to consolidate continues their abuse of the bankruptcy court system. If the debtors file any further frivolous motions with this court, the court will not hesitate to assess sanctions under Rule 9011.

IT IS, THEREFORE, SO ORDERED.

/s/ George C. Paine
GEORGE C. PAINE, II
CHIEF JUDGE

APPENDIX B

IN RE: JOHN J. KERSHAW and MARY N. KERSHAW, Debtors

JOHN J. KERSHAW and MARY N. KERSHAW, Plaintiffs,

Vs.

MARGARET L. BEHM, TRUSTEE, Defendant.

Bankruptcy No. 383–00432.

Adv. No. 385–0035.

ORDER

On July 11, 1985, this court orally made findings in the above-styled matter. It further ordered the findings to be transcribed

by the court reporter as quickly as could be done. Both the oral findings and the transcription order to the court reporter were done to expedite a resolution of this matter to the extent possible.

These findings, which consisted of approximately eight full pages, were not received by the court for some two weeks. Upon a review of them, the court determined they varied considerably from the findings of the court, which conclusion was affirmed by a review of the tape.

The transcript should have read as follows:

"This matter is before the court on a complaint in which the former debtor-in-possession, now debtor, complains of a breach of his Chapter 11 trustee's fiduciary duties, requests money damages for the breach of those duties, and implicitly asks for removal of the trustee. Although this latter request was made in the original complaint, it was not in the amended complaint; and the pretrial statement does not reflect this as an issue. However, to resolve this matter with a minimum of judicial time, the court will consider removal at this time also.

"The Sixth Circuit has addressed the standard of care of a trustee in *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451. This standard is the exercise of due care, diligence, and skill, both as to affirmative and negative duties. The measure of care, diligence, and skill required of a trustee is that of "an ordinary prudent person in the conduct of their private affairs under similar circumstances and with a similar object and view." Mistakes in judgment cannot be the basis of a trustee's liability in his or her official capacity.

"The complaints of the debtor are multifold. They are: that the trustee has failed to comply with her duties under § 1106 generally; that she has in some way jeopardized sales the debtor was pursuing; and, that she failed to be diligent as to filing a plan or even reports as required by Local Rules. Although there is over-lapping of these complaints, the court will try to address them in order.

"As to § 1106, the trustee is required under (a)(3) to investigate the debtor and his financial condition. Under (a)(5), the trustee is, as soon as practicable, to file a plan, file a report why a plan has not been filed, or recommend conversion of the case to one under Chapter 7.

"As to the trustee's duties under (a)(3), the court finds she has been as diligent as she could be under the circumstances but has been prohibited from doing this because of the debtor's actions. He is, in fact, the master of his own misfortune. He has failed to comply with § 521 and he has failed to provide the trustee with requested documents, including financial information and information regarding other pending state court actions.

"The trustee could have expended a tremendous amount of time and legal expense in a case which has to date generated $250 in estate funds in possession of the trustee, or she could rely on the debtor to comply with his legal duty under the Code and send by mail or drop off at her office the requested documents. She has done exactly what this court would expect of any trustee to conserve the assets of the estate and put their faith in the law.

"As to (a)(5), it is obvious that the trustee was unable to propose a plan because of the failure of the debtor to turn over the proper and requested information to her. Accordingly, she, certainly within a reasonable time in light of the circumstances, filed a motion to convert the case to one under Chapter 7, but withdrew it when it appeared, through statements of the debtor and his attorney, that a "deal" had been struck or was about to be struck which would sell property of the estate. She thereupon, quite reasonably, withdrew her request. If there is anything the court would fault the trustee on, it is her failure to request conversion again or file a liquidating plan sooner. It is the court's opinion that she has shown Job-like patience and has given the debtor far more time and

effort than the conduct of the debtor warrants.

"As to the trustee's jeopardizing or in some way undermining sales which the debtor was pursuing, the court finds the proof to be that there was no sale entered into or even imminent. The trustee has done nothing to inhibit the debtor's attempts to sell the estate's property; and the fact is that after more than two years in bankruptcy, the debtor has no contracts, or even options, to sell this property of the estate.

"As to whether the trustee has inhibited the debtor from filing a plan, the proof is all to the contrary. The debtor, in fact, has filed two plans: One, according to the testimony, was not confirmed by the court; and the second has not been set for a disclosure statement and confirmation hearing, as a consequence of the debtor's failure to comply with Local Rule 16 to have the matter set. The court would note that, according to the testimony, the debtor has filed an unconfirmable plan of reorganization, because it is predicated on a creditor, who, at this time, according to the proof, is unwilling to allow its property to be included in the plan and which property is outside the jurisdiction of this court. To suggest that the court can "cram down" the bank on this issue, as testified to by the debtor, shows the grossest misunderstanding of § 1129 by an attorney that this court has heard. Any skepticism the trustee has about a successful reorganization is, after listening to the proof, certainly shared by this court.

"As to the failure of the trustee to file reports, the court once again notes that the debtor has failed to provide the information which would allow her to do this. This complaint, created by the debtor's contumacious recalcitrance, points out the absurdity of the debtor's adversary proceeding. The court would note, though, the trustee has filed reports to the best of her ability in light of the lack of cooperation given her by the debtor, which filings the court finds to be in as much compliance with its Local Rules as it would require under the circumstances.

"As to the general diligence of the trustee, the court finds that she has been as diligent as possible under the circumstances. She has requested appropriate information from the debtor; she has dealt with the debtor and his attorneys; she has filed actions with this court to ensure that the debtor complies with his responsibilities under the Code; and, she has filed actions with this court to ensure that the debtor complies with his responsibilities to follow the orders of this court.

"The proof further reflects that the debtor has completely disregarded the Chapter 11 trustee which the court has placed in his case. He has refused to provide her with requested information; he has failed to make her aware of his efforts to sell property of the estate; he has failed to make those with whom he was negotiating to sell property of the estate aware that she was the trustee in his Chapter 11 case; and, he has expended monies of the estate, not only without authorization of the trustee but without even notifying her.

"The court, accordingly, finds that there is no basis for finding a breach of any duty of the trustee or for removing her.

"Inasmuch as the debtor filed an action complaining about a breach of fiduciary duties without even remotely proving a breach and requested damages in the amount of $400,000 without proving any damages, the court feels this is an appropriate case for sanctions under Rule 9011. The trustee's attorney will provide the court with an affidavit as to her services in this matter, a statement of all costs for the preparation and trial of this matter, and the time lost by the trustee from her law practice in the preparation and trial of this matter. The affidavit shall further reflect the hourly rate of both the trustee and her attorney. These costs will be assessed against the debtor.

"These oral findings will be transcribed by the court reporter as quickly as it can be done at court expense, which will be

reimbursed by the debtor as part of the Rule 9011 sanctions.

"Lastly, the court finds that the unrebutted proof reflects that the debtor told the trustee that he had taken $2,000–$3,000 out of his bank account because he was afraid she would get it. The court can only conclude that this action was knowingly done. As to whether it was fraudulently done or done on bad advice of counsel is not up to this court to decide. However, because of the possibility that it was fraudulently done, this court has no option but to refer this matter to the U.S. Attorney's Office for the Middle District of Tennessee to determine whether 18 U.S.C. § 152 has been violated, and a copy of this order will be sent to that office for that purpose. The attorney for the trustee will submit to this court findings of fact and conclusions of law not inconsistent with this oral finding. The court notes that past orders of the trustee have been skeletal, and the court would suggest that in this order a full findings of fact and conclusions of law be submitted.

"That's the order of this court."

A copy of the transcript received by the court is attached hereto.

When this court orders a short transcript to be typed as quickly as possible, it expects it in a matter of days at the most. Further, it goes without saying that the transcript should read *exactly* as the proceeding in court. As a consequence of the delay in receiving the transcript and the appalling discrepancies in the transcript, the court will amend its oral order to reflect that there be no payment for the transcription of the court's findings.

If any further discrepancies or delays occur in the transcription of proceedings before this court, the court reporter involved will be barred from providing further service to this court.

IT IS, THEREFORE, SO ORDERED.

/s/ George C. Paine
GEORGE C. PAINE, II
U.S. BANKRUPTCY JUDGE