**In re G. WEEKS SECURITIES,
INC., Debtor.**

**Constance H. WEEKS, Plaintiff,**

**v.**

**Bruce S. KRAMER; Rosenfield, Borod &
Kramer, P.C., a/k/a Borod & Huggins,
a partnership; T. Harold Craig; and
Francis J. Scott, Defendants.**

**Bankruptcy No. 79–22564–B.
Adv. No. 87–0208.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Aug. 26, 1988.

---

13. *Celotex,* 106 S.Ct. at 2553.

See also, Bkrtcy., 33 B.R. 312.

James F. Schaeffer, Sr., Memphis, Tenn., Erich W. Merrill, Memphis, Tenn. for Constance H. Weeks.

Joseph W. Barnwell, Jr., Petkoff, Lancaster & Barnwell, Memphis, Tenn. for Bruce S. Kramer and Borod and Huggins.

J. Alan Hanover and Barbara B. Lapides, Hanover, Walsh, Jalenak, and Blair, Memphis, Tenn. for T. Harold Craig and Frances J. Scott.

MEMORANDUM OPINION AND REC-
OMMENDATION TO DISTRICT
COURT SUGGESTING WITHDRAW-
AL OF REFERENCE OF ADVER-
SARY PROCEEDING: JURISDIC-
TION AND JURY TRIAL

WILLIAM H. BROWN, Bankruptcy Judge.

This adversary proceeding presents unique questions of the jurisdiction and procedural authority of the Bankruptcy Court for this District, and the Court has *sua sponte* examined whether the issues presented in this adversary proceeding are core or related[1] and whether this Court has the authority to conduct the jury trial requested by the plaintiff, Constance H. Weeks. As a result of this Court's analysis of the issues and law, the Court enters this Memorandum Opinion and recommends to the Honorable United States District Court for the Western District of Tennessee, Western Division, that the District Court withdraw the reference of this specific adversary proceeding, pursuant to 28 U.S.C. Section 157(d), and that the District Court then determine whether this adversary proceeding may properly be tried in the District Court or should be tried in an appropriate state court. These findings and conclusions are made pursuant to Bankruptcy Rule 7052.

## CASE HISTORY

The voluntary Chapter 11 case was filed by the debtor, G. Weeks Securities, Inc. (hereinafter "debtor") on November 6, 1979, and the case file reflects that signifi-

---

1. The plaintiff originally failed to comply with Bankruptcy Rule 7008 but has now amended her complaint to allege that this is a non-core proceeding.

cant activity and litigation occurred. The Court notes that this Court's "Order" files consume thirteen separate jackets of pleadings, plus adversary proceedings. A "Joint Plan of Reorganization," as modified, was confirmed, after notice and hearing, by the Honorable William B. Leffler, on December 2, 1981. In the chapter 11 case, Judge Leffler appointed co-trustees for the Chapter 11 debtor on February 7, 1980, those co-trustees being two of the defendants in the pending adversary proceeding, T. Harold Craig and Francis J. Scott.

On March 30, 1984, the Honorable Odell Horton, United States District Judge, acting under a withdrawal of reference order dated February 22, 1984,[2] entered an "Order Approving Agreement and Plan of Merger," under which, after notice and hearing, the Court approved a merger, consistent with the confirmed plan of the debtor. Under the confirmed plan, Consolidated Federal Mortgage Securities Corporation ("Consolidated") had been formed, under which Federal Mortgage Services and Securities Corporation ("Federal") and Federal Mortgage Management, Inc. ("Federal Mortgage") were subsidiaries. Under the merger, Consolidated was merged into a surviving corporation, Diversified Financial Services Corporation ("Diversified"). The details of the merger are not pertinent to this adversary proceeding; however, numerical paragraphs three and five of Judge Horton's order provides:

3. The jurisdiction of the United States Bankruptcy Court for the Western District of Tennessee over Consolidated and its subsidiaries (excluding Federal Mortgage Management, Inc. and its retained assets and activities as well as all adversary proceedings and claims), is hereby terminated upon the effective date of the merger;

5. The jurisdiction of the Bankruptcy Court over Federal Mortgage Management, Inc., the pending adversary proceeding, disputed claims and the retained assets and activities is retained and unaffected.

These paragraphs at first reading seem to retain for and leave in the Bankruptcy Court jurisdiction over this adversary proceeding. However, this adversary proceeding was not initiated in the Bankruptcy Court until September 29, 1987, but the adversary proceeding began as a suit against the same defendants in the Circuit Court of the Thirteenth Judicial District of Tennessee, case number 13835–7, T.D., which was filed on December 6, 1985. A copy of the Circuit Court Complaint is a part of the adversary file. The complaint alleges that the plaintiff, Constance Weeks is a "resident citizen" of Shelby County, Tennessee; that all defendants except T. Harold Craig are also "resident citizens" of Shelby County, Tennessee; and that Mr. Craig is a "resident citizen" of Houston, Mississippi. Therefore, from the face of the complaint, diversity of citizenship did not exist to permit the filing of the original suit in the United States District Court. 28 U.S.C. Section 1332(a). Outside of reference to the bankruptcy case, no federal law causes of action are stated. 28 U.S.C. Section 1331. The original complaints in both the Circuit and this Court alleged acts of negligence as to the defendants and sought compensatory damages of $500,000.00 and punitive damages of $1,500,000.00. The Plaintiff Weeks sought a jury trial in the state court, as well as in this Court.

On September 4, 1986, the defendants Craig and Scott filed a "Petition" in the United States District Court for the Western District of Tennessee, seeking to enjoin further proceedings in the state Circuit Court. The "Petition" was brought pursuant to "28 U.S.C. Section 959, Bankruptcy Rule 7065 and Federal Rule of Civil Procedure 65," and the "Petition" alleged that permission of the Bankruptcy Court was not sought before the state suit was brought against the co-trustees of the chapter 11 debtor, and that "the rights of both parties as well as those of the bankrupt estate can be fully and more properly protected if such proceedings are enjoined

---

**2.** The general order of reference to this Court had been modified due to Judge Leffler's son being employed as an attorney with the law firm which represents Craig and Scott. The death of Judge Leffler obviated this reason for the withdrawal.

and the respondent herein files her claim in the appropriate bankruptcy court." (Page 5 of "Petition"). A copy of the "Petition" is a part of the adversary file.

After hearing on April 22, 1987, before the Honorable Odell Horton, the District Court enjoined Constance Weeks from proceeding in the state court and "remanded [the cause of action] to the United States Bankruptcy Court for the Western District of Tennessee, Western Division, Division 1 thereof, for further proceedings." A copy of this order dated April 29, 1987, is a part of the adversary file. As a result of this order, the Plaintiff Weeks filed her complaint as an adversary proceeding in this Court on September 29, 1987, alleging substantially the same negligence causes of action and jury demand as were asserted in state court.

The procedural and jurisdictional quagmire is complicated further by the "Order of Final Decree Closing Case" which was entered by Judge Leffler on February 19, 1987, prior to Judge Horton's remand order. A copy of that order and of the underlying "Application For A Final Decree" is part of the adversary file. The defendants in this adversary proceeding initiated the closing of the chapter 11 case by their filing on January 20, 1987, of an application for final decree. It is significant that the defendants of the adversary proceeding were aware, prior to the entry of the District Court's remand of the state proceeding, that the chapter 11 case number 79–22564 had been "closed" by the Bankruptcy Court's February 19, 1987, order. In their application for final decree, the co-trustees stated that they had complied with all requirements of the order confirming the debtor's plan of reorganization and that as a result of the merger order mentioned above, certain assets and activities, including "all adversary proceedings and claims, were transferred and assigned to and vested in Federal Mortgage Management, Inc." (Page 2 of Application). The application specified the outstanding adversary proceedings, in numerical paragraph six, and listed under subsection (d) of that paragraph is the description of the Constance H. Weeks' state court

suit. The co-trustees noted that an application for injunction was then pending before the District Court.

The application for final decree asserts that the Bankruptcy Court, by its earlier orders, had retained jurisdiction to hear the complaint of Constance Weeks, and that the Bankruptcy Court had authority to "determine the issues between the parties in interest pursuant to 11 U.S.C. [Sections] 105 and 350(a) and to effectuate its previous orders. (See also Rules 3022 and 5009, Rules Bankruptcy Procedure)." (Page 3 of Application). Numerical paragraph eight of the application asserts that the "claim" of Constance Weeks should be disallowed by the Bankruptcy Court, and asserts that the Bankruptcy Court retained jurisdiction to "allow or disallow disputed claims" and to "determine any other disputes involving claims." Further, it is alleged that the Constance Weeks' dispute interferes with the execution of the plan and with administration of the estate. (Page 4 of Application). In numerical paragraph nine of the application, the co-trustees ask the Bankruptcy Court to either hear the Constance H. Weeks' cause of action or "refer the matter to the United States District Court for disposition." (Page 4 of Application).

The order entered on this "Application For A Final Decree" purports to close the case. However, the order must be read in its entirety to understand its impact upon this adversary proceeding. Specifically, the order, in numerical paragraph five, page two, states that all adversary proceedings and claims were transferred and assigned to and vested in Federal Mortgage. Federal Mortgage would continue in existence in part for the disposition of the litigation, including Constance H. Weeks' suit, which is specifically mentioned in paragraph six, page three of the order. Comparing this provision to Judge Horton's February 22, 1984, order approving the merger, in that 1984 order jurisdiction over Federal Mortgage had been retained.

Numerical paragraph seven of the Order of Final Decree is most significant, and is quoted in its entirety:

7. The action referred to in paragraph 5 d. above is a suit by Constance H. Weeks against the Co–Trustees and their attorneys alleging negligence arising out of the collection of a promissory note owned jointly by the Estate and Constance H. Weeks. Since the Complaint apparently seeks a judgment against the Co–Trustees in that capacity, and against Bruce Kramer and Borod & Huggins in their capacity as attorneys for Co–Trustees, and since the Co–Trustees and Kramer and Borod & Huggins have previously been appointed and approved respectively by the Court, that action is essentially against the Estate, and any judgment obtained by the plaintiff against the Co–Trustees would be satisfied out of Estate funds. However, pursuant to the Plan of Reorganization, as modified, all of the Estate's assets were transferred to Federal Mortgage. Furthermore, the holders of allowed claims against the Estate, pursuant to the Plan of Reorganization, exchanged their claims for shares of Federal Mortgage. Since the assets and liabilities of the Estate have been transferred to Federal Mortgage, the Court finds it entirely appropriate that the defense of the claim of Constance H. Weeks be transferred to Federal Mortgage. Federal Mortgage is empowered to defend this action on behalf of the Co–Trustees and their attorneys, to compromise and settle such litigation on the terms it deems in the best interest of the Estate, and to reserve a sufficient amount of funds for the defense, compromise, or satisfaction of judgment consistent with this Order. Accordingly, the Court finds that the Co–Trustees and their attorneys should be indemnified and held harmless by Federal Mortgage for the amount of any such judgment, plus costs, as may be obtained by Constance H. Weeks, and for attorney's fees and costs incurred by the Co–Trustees and their attorneys in defense of that action, on the following conditions:

a. A Judgment is rendered in favor of [sic] the Co–Trustees, or a judgment is rendered against the Co–Trustees in their capacity as Co–Trustees; or, if no such express determination is made, that the judgment against the Co–Trustees be grounded on simple negligence and not on gross, willful, or reckless conduct or on acts exceeding the powers and duties of the Co–Trustees under Title 11 of the U.S. Code;

b. A judgment is rendered in favor of Bruce Kramer and Borod & Huggins, or a judgment is rendered against Bruce Kramer and Borod & Huggins in their capacity as attorneys for the Co–Trustees, unless such judgment is grounded on gross or reckless conduct.

This portion of the order contains a contradiction in concept. On one hand, the order recognized that all estate assets had been transferred, pursuant to the plan, to Federal Mortgage, but that any potential recovery by Weeks would be from estate funds. The Court notes that the defense of the Weeks' claim was "transferred to Federal Mortgage." A portion of paragraph seven of course refers to indemnification of the defendants of this adversary proceeding, and discusses potential findings of liability for conduct or acts "exceeding the powers and duties of the Co–Trustees under Title 11 of the U.S. Code." The contradiction is of course that upon the closing of the bankruptcy case, there no longer existed a debtor's estate, nor would bankruptcy trustees exist. One effect of confirmation of the plan was to vest property as specified in the plan. 11 U.S.C. Section 1141(b). However, the order was apparently recognizing the practical effect of the confirmation—that all assets were transferred to Federal Mortgage before the disposition of Constance H. Weeks' potential claim against the assets, and the apparent effect of the order is that Federal Mortgage recognized its responsibility to preserve some *former estate assets* for satisfaction of the Constance H. Weeks' claim, if allowed. Even though the Order of Final Decree says that the case is closed, the case file has not been closed by the clerk's office and cannot be until the pending adversary proceedings are terminated.

This Court does not have before it simply an objection to a claim. *See,* Bankruptcy

Rule 3007. It has a complaint, grounded in negligence, which asserts a post-petition claim against not only the estate, but also against individual defendants. Therefore, the Court may not dispose of the adversary proceeding without determining whether all or part of the proceeding is core under 28 U.S.C. Section 157.

This Court has construed the order of Judge Horton remanding this cause to the Bankruptcy Court to be a directive to determine, in part, if this Court has both jurisdiction and procedural authority to hear the adversary proceeding. At this Court's direction, the record of the state court proceeding has been transferred to this Court. As a part of the jurisdictional inquiry, status conferences and pre-trial conferences have been conducted by this Court. The plaintiff Weeks has filed an amendment to her complaint, pursuant to Bankruptcy Rule 7008, asserting that the proceeding is "non-core" and that the plaintiff Weeks "does not consent to the entry of final orders or judgments by the Bankruptcy Judge." However, at a pre-trial conference on April 21, 1988, the parties submitted a written "stipulation" under which the parties

consent that this cause shall be tried by a jury in this Bankruptcy Court, and the parties consent that the verdict of the jury shall have the same force and effect as a jury verdict after trial in the United States District Court, reserving to all parties the right to appeal from such verdict because of errors in the trial.

A further pre-trial was held on May 26, 1988, and at that hearing, the Court announced that it would *sua sponte* determine if the proceeding was core and if the Court had authority, notwithstanding the stipulation, to conduct a jury trial. The parties were given until June 30, 1988, to submit briefs on the jurisdiction and jury issues. No briefs have been filed. Counsel for the defendants Kramer and his law firm stated at pre-trial conference that the "stipulation" was entered on their behalf with the understanding that if the matter was core, this Court should be able to determine the issues without the necessity of a jury. That is, the defendants Kramer and his law firm were willing for this Court to conduct a jury trial only in a non-core or related proceeding.

### 28 U.S.C. Section 959(a)

In their "Petition" filed in the District Court seeking injunction of the state proceedings, the co-trustees relied in part upon 28 U.S.C. Section 959, of which subsection (a) provides:

(a) Trustees, receivers, or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connection with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of this right to trial by jury.

However, that Code provision does not immunize a bankruptcy trustee from state court litigation or from state regulation. In fact, Section 959(a) "is intended to permit actions redressing torts committed in furtherance of the bankrupt's business operations." *In re Wall, Tube & Metal Products Co.*, 56 B.R. 918, 925 (Bankr.E.D. Tenn.1986), *rev'd on other grounds*, 831 F.2d 118 (6th Cir.1987); *quoting from In re American Associated Systems, Inc.*, 373 F.Supp. 977, 979 (E.D.Ky.1974); *see also Palmer v. Webster & Atlas National Bank of Boston*, 312 U.S. 156, 163, 61 S. Ct. 542, 575, 85 L.Ed. 642 (1941). As the statute specifically provides, "leave of the [bankruptcy] court" is not a prerequisite to suing a bankruptcy trustee when the suit concerns the trustee's "carrying on business." *See, e.g., In re Reich*, 54 B.R. 995, 998 n. 1, 13 C.B.C.2d 989, 13 B.C.D. 953 (Bankr.E.D.Mich.1985). Section 959(a) authority to sue a trustee may be limited by the equity powers of the appointing court, and that appears to be a part of the position taken by the co-trustees before the District Court. *See, e.g., Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398 (9th Cir.1970); *In re Television Studio School of New York*, 77 B.R. 411 (Bankr.S.D.N.Y.1987).

The more serious question is the extent of trustee liability in a suit against the trustee and whether the trustee may be personally liable for trustee acts. The definition of a standard of care for a trustee is an issue that has not yet been presented to this Court in this adversary proceeding; however, there is case authority in the Sixth Circuit. *See, Ford Motor Co. v. Weaver,* 680 F.2d 451 (6th Cir.1982) ("A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties."); *In re Kershaw,* 59 B.R. 618, 624 (Bankr.M.D.Tenn. 1986); *In re Reich, supra; see generally,* Tiller, "Personal Liability of Trustees and Receivers in Bankruptcy," 53 *Am.Bankr.L. J.* 75 (Winter 1979); Agee, "Personal Liability of Bankruptcy Trustees to the Estate and To Parties in Interest: A Comment," *Norton Annual Survey of Bankruptcy Law* (1987), p. 315. This issue may be critical to the resolution of the merits of the suit against the co-trustees because of the indemnity language found in the final decree order of Chief Judge Horton, quoted from hereinabove. The language of that order may require the application of Sixth Circuit authority to the facts of this case, and the question therefore exists as to whether the prior orders of this case give rise to a federal bankruptcy law question as to the cause of action against the co-trustees.

Disregarding that issue for the moment, it appears that the District Court (including Bankruptcy Court by reference) is a proper venue forum for the suit against these co-trustees, since the cause of action is one "based on a claim arising after the commencement of such case from the operation of the business of the debtor." 28 U.S.C. Section 1409(e). The plaintiff Constance Weeks originally chose the state court as the forum for this litigation, and the state suit has not been removed pursuant to 28 U.S.C. Section 1452; rather, the defendants obtained an injunction of the state court proceedings. Absent a removal, this Court is then authorized to dissolve the pending injunction and to permit the state suit to proceed. However, such an action is thwarted by the fact that the plaintiff has now filed a separate complaint in this Court. The existence of venue in this Court does not, however, confer jurisdiction upon this Court.

## CORE VS. NON–CORE PROCEEDING

The Court's next duty is to determine if the adversary proceeding is core under 28 U.S.C. Section 157(b)(2). As an aftermath of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598, (1982), Congress enacted the 1984 Amendments to the Bankruptcy Code. Those Amendments included the structure of the jurisdictional grant to the district and bankruptcy courts. *See e.g.,* King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," 38 *Vand.L.Rev.* 675 (1985); Hendel and Reinhardt, "Attempting to Define the Scope of Bankruptcy Court Jurisdiction: No Miracle Drugs for the Patient," 92 *Com.L.J.* 350 (Winter 1987). The United States Code describes and provides for the basic Congressional grant of jurisdiction to the United States District Court under 28 U.S.C. Section 1334:

Bankruptcy cases and proceedings.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11,

with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

The bankruptcy jurisdiction lodged in the district court is not restricted from that court's jurisdiction prior to *Marathon*. *See, In Matter of Wood*, 825 F.2d 90, 92–93 (5th Cir.1987). The 1984 Amendments did, however, restrict the bankruptcy court's independent judicial power, including that court's jurisdiction over non-core matters.

As the Fifth Circuit pointed out in the *Wood* decision, core proceedings are those over which the bankruptcy court is to exercise full and final judicial authority subject to appeal under 28 U.S.C. Section 158. *In Matter of Wood, supra*, at 94–98. Noncore or otherwise related proceedings, in contrast, enjoy only a limited judicial authority in the bankruptcy court, which may only enter proposed findings of fact, conclusions of law and orders. Final orders in related proceedings must be entered by the appropriate district court, under 28 U.S.C. Section 157(c), absent consent of the parties.[3]

The discretionary jurisdictional reference to the bankruptcy court is found in 28 U.S.C. Section 157, and the bankruptcy court's authority is not as complete as Section 1334's grant to the district court. The district court *may* act to refer bankruptcy cases and proceedings under 28 U.S.C. Section 157(a),[4] and if the reference is made, Section 157(b)(1) then gives full judicial authority to the bankruptcy judge in bankruptcy cases and in core proceedings. A general reference order (Miscellaneous Order No. 84–30) was entered by the District Court for the Western District of Tennessee on July 11, 1984. Section 157(b)(2) [5]

**3.** 28 U.S.C. Section 157(c):

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

**4.** 28 U.S.C. Section 157(a):

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

**5.** 28 U.S.C. Section 157(b)(2):

Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid or recover fraudulent conveyances:

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent or priority of liens;

defines, by non-exclusive examples, core proceedings.

As *Wood* illustrates, to find at least limited judicial authority in the bankruptcy court, it is only necessary to determine that a matter is "at least 'related to' the bankruptcy" case. *In Matter of Wood, supra* at 93. The Sixth Circuit has, like *Wood*, adopted a broad concept of "related to" proceedings. All that is required for a proceeding to be related to the bankruptcy case is that the particular proceeding have a conceivable effect on the estate being administered in bankruptcy. *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986); *see also, Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). This Court must therefore determine whether this proceeding is core or merely related to the case or non-related, and the Court is charged with making an independent determination, if necessary. 28 U.S.C. Section 157(b)(3).

■ It is true in the present proceeding that the parties appear to have consented to this Court's hearing the proceeding, and so it may be argued that the core versus related dichotomy is meaningless here. However, as referred to previously, counsel has stated that some defendants' consent to this Court's hearing the proceeding was conditioned upon an assumption by those defendants that this was a related proceeding and that the Court would conduct a jury trial in that related proceeding. If the Court determines the proceeding to be core, those defendants take the position that a jury trial is not required in core proceedings. Since the plaintiff is requesting a jury trial, whether core or related, the parties must first be advised of the Court's conclusions as to the nature of the proceeding. In the case *sub judice* that is not a simple determination. A proceeding is not core merely if it fits neatly into the examples provided in Section 157(b)(2), but more importantly, a proceeding is core if the proceeding invokes substantive rights provided by Title 11 (the Bankruptcy Code) or if it is a proceeding which by its nature could arise only in the context of a bankruptcy case. Section 157 apparently equates core proceedings with the categories of "arising under" and "arising in" proceedings. *In Matter of Wood, supra* at 96–97. A related proceeding does not depend upon Code provisions nor does it survive only in a bankruptcy context; nevertheless, it has a potential impact on the bankruptcy estate. *Id.* at 97. A non-related proceeding would have no conceivable impact on the estate.

An examination of this adversary proceeding reveals that the cause of action stated is one of common law negligence. Constance Weeks alleges that, as a result of a settlement of voidable transfer litigation with the chapter 11 co-trustees, she became the owner of a one-half interest in a certain note for $250,000.00 payable by one Aubrey D. O'Connor. The bankruptcy estate owned the remaining one-half interest. It is alleged that the co-trustees and their attorneys were responsible for collection of the note from its maker, O'Connor. Further, Constance Weeks alleges that the co-trustees unduly and negligently delayed collection efforts to the detriment of the payees, that the co-trustees rejected settlement with O'Connor, and that O'Connor ultimately discharged his note obligation in his Chapter 7 bankruptcy. Judgment on the note had been obtained against O'Connor in the amount of $391,221.00 but the note was then uncollectible. It is alleged that O'Connor at one time had "substantial assets, and could have paid the note," but that the co-trustees' negligence prevented collection.

As to the defendants Bruce Kramer, attorney, and his law firm, the plaintiff alleges that she was "an intended beneficiary of

(L) confirmation of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Kramer's agreement to render legal services" and that Mr. Kramer was likewise negligent in "failing to exercise reasonable and ordinary care." Breach of contract is also alleged which breach and negligence are alleged to be the "direct and proximate causes of the resultant uncollectability of the note and the loss thus sustained by the plaintiff." (Complaint of Constance H. Weeks.)

The plaintiff sued all defendants, jointly and severally, for damages. As stated hereinabove, a jury trial is demanded. The Plaintiff's original complaint, filed in the Shelby County Circuit Court, stated substantially the same complaint and causes of action, as in the bankruptcy proceeding. At no point does the complaint raise a statutory cause of action and no reference is made to the Bankruptcy Code as a basis for the complaint. The plaintiff has now further amended her bankruptcy proceeding complaint, which amendment is resisted in part, but the amendment, if allowed, still does not raise bankruptcy statutory causes of action.

## CO–TRUSTEE DEFENDANTS

On first reading of the complaint, one may conclude that it is core because the co-trustees are defendants and thus the proceeding arises only in the context of a bankruptcy case. It appears logical that had there been no co-trustees appointed by this Court, this cause of action could not have existed; however, that is an overly simplistic conclusion. To determine the extent of subject matter jurisdiction, the nature of the cause of action must be examined. *See, e.g., In re Salem Mortgage Co., supra; In re Nanodata Computer Corp.,* 74 B.R. 766, 770 (W.D.N.Y.1987) ("[T]he linchpin to deciding whether a cause of action arises under Title 11 or arises in a case under Title 11 is the underlying nature of the cause of action itself."). The cause of action against these co-trustees is one of common law negligence.[6] Negligence certainly does not exist solely in the context of a bankruptcy case, although the specific cause of action stated against the bankruptcy co-trustees, in their official capacity,

could only exist if there were in fact trustees. The complaint, however, alleges punitive damages which raise the specter of gross negligence. As mentioned in the discussion of Section 959(a), personal liability may arise from willful or deliberate acts of the co-trustees.

Accepting this first tier of analysis, is a cause of action stated against the bankruptcy estate or against the bankruptcy co-trustees in their official capacities or is a cause of action alleged against the co-trustees in their personal capacities? That is, does the plaintiff attempt to recover from estate funds or from the co-trustees' bond or also from the co-trustees' personal assets? These answers, of course, are not apparent only from the complaint but the prior orders of this Court also provide a part of the answer. As previously quoted, Judge Leffler's order of February 19, 1987, makes it clear that no assets remain in the estate for satisfaction of a judgment in favor of Constance Weeks. All estate assets were transferred by the confirmed plan to Federal Mortgage, which assumed responsibility and liability for the defense of this litigation. Certain conditions are imposed, in that order, on Federal's liability for indemnification for any judgment. As to the co-trustees, indemnification is limited to co-trustee official capacity acts, within the confines of Title 11, and to acts of simple negligence. Thus, a judgment against the co-trustees for gross negligence or for acts outside their Title 11 fiduciary duties appears to not be subject to indemnification.

On one hand, the February 19, 1987 order seems to relieve the estate from any liability and thus the claim against the co-trustees would have no impact on the bankruptcy estate, which no longer seems to exist. On the other hand, the order is the only reference, for purposes of this litigation, to the Bankruptcy Code as a factor in ultimate liability of the co-trustees. If the Court found that no existence of estate property equals a conclusion that this cause of action was no longer core, the Court could then be forced to conclude that

---

**6.** The breach of contract action appears to lie    only against the attorney defendants.

the cause of action was also not related to the bankruptcy case. The rationale would be that if no bankruptcy estate exists the Constance Weeks' cause of action could have no conceivable impact on the non-existent estate. But, language of the Court's February 19, 1987 order prevents such a strained result. That order recognizes that even though the estate property was transferred to Federal Mortgage, the transferee was responsible for reserving sufficient estate assets to satisfy a judgment, if the judgment met the conditions set out in the order. Further, this Court, or the District Court, by Judge Horton's Order, did retain jurisdiction over this adversary proceeding, which has now been remanded to this Court. It would be anomalous for this Court to now hold that it lacks *any* authority to hear the cause of action against the co-trustees.

■ The Court concludes that the cause of action against the co-trustees is core, at least in part, under 28 U.S.C. Section 157(b)(2)(A), (B), and (O). The Court is mindful that subsections (A) and (O) should not be read so broadly as to falsely impose core jurisdiction on a bankruptcy court. *See, Matter of Wood, supra* at 95; *see also In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986) ("[A] court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems."); *In Matter of Richardson,* 85 B.R. 1008, 1022 n. 29 (Bankr.W.D.Mo.1988). In reality, the cause of action against the co-trustees is not a claim against the bankruptcy estate assets which were received from the debtor; rather, this post-petition claim is for negligent disposition of those assets. Nevertheless, Ms. Weeks' core claim against the co-trustees is just that—a claim,[7] and to the extent this Court's final order of February 19, 1987, directed any recovery against the reserved estate assets, the cause of action is core. The disposition of the core portion of this proceeding is part of the overall plan of the debtor. A logical and convincing argument exists that the entire cause of action against the co-trustees is core because it involves issues of their fiduciary duties as trustees and that bankruptcy law interpretation is required. But, to the extent that any ultimate judgment should be for co-trustee actions in excess of their chapter 11 duties, the Court's prior order does not reserve estate funds. This portion of the claim does not arise under Title 11, although the overall claim did arise during the chapter 11 case. On balance, the personal liability cause of action against the co-trustees is non-core and may be totally unrelated to the bankruptcy estate. Under the *Wood* analysis, there is no conceivable impact on the bankruptcy estate from a judgment against the co-trustees for their personal liability. At best, such a personal liability cause of action is merely "related to" this bankruptcy case. At worst, it is not related. In either event, this Court is not authorized, absent "express consent," to hear the non-core cause of action for gross negligence against the co-trustees and to enter final findings and conclusions in that regard. *See,* Bankruptcy Rule 7012. Even if the entire cause of action against the co-trustees is construed to be core, there remains the cause of action against the attorney defendants.

## ATTORNEY DEFENDANTS

As to the defendants Kramer and his law firm, their potential liability is based on common law negligence and on an implied contract theory—both non-bankruptcy actions. It is true that the determination of whether a proceeding is core does not rest "solely on the basis that its resolution may be affected by state law." 28 U.S.C. Section 157(b)(3). However, here the cause of action is not merely *affected* by state law,

---

7. 11 U.S.C. 101(4)
    "claim" means—
    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

it is *created* by state law. Further, a prior order of this Court permits estate indemnification of the attorneys for simple negligence but not for "gross or reckless conduct." All causes of action arising *during* the chapter 11 case do not of necessity become core. Rather, a judicial determination must be made of what is core. This Court makes a distinction between "arising in a case" and arising during a case. Had the February 19, 1987 order not existed, the cause of action against the attorneys would not affect the administration of this estate, but that order makes the simple negligence portion of the cause of action core because of the indemnification from reserved estate assets. However, as to the gross negligence allegations, if a controversy has only an incidental connection with the pending case, the matter is non-related. *Matter of Tvorik*, 83 B.R. 450, 455 (Bankr. W.D.Mich.1988) (Court must "determine the relative 'greyness' of the various causes of action."). If the outcome will have an effect on the estate being administered, it is at least related, if not core. *Hoffman v. Roberto*, 85 B.R. 417, 422 (W.D.Mich.1988), quoting *In re Consulting Actuarial Partners*, 72 B.R. 821, 828, 16 C.B.C.2d 906 (Bankr.S.D.N.Y.1987). As with the co-trustees, the Court concludes that the gross negligence assertions are non-core and are at best, related or at worst, non-related.

But for this Court's prior orders, the entire adversary proceeding would not be core and would not be related. This Court is not persuaded that Judge Leffler intended to elevate the entire law suit to a core proceeding if it was not one. The causes of action are for torts allegedly committed both pre- and post-confirmation. The estate is closed, except for the reservation of assets by the transferee under the confirmed plan. An "essential nexus between the dispute and the bankruptcy case no longer exits" to transform this tort action into a totally core proceeding. *In re Lindsey*, 85 B.R. 397, 398 (Bankr.W.D.Tex. 1988). Retention of jurisdiction by this Court's order did properly maintain subject matter jurisdiction but it may not necessarily be core jurisdiction. *Id., citing, In re Tennessee Wheel and Rubber Co.*, 64 B.R. 721, 15 C.B.C.2d 882, 14 B.C.D. 1166 (Bankr.M.D.Tenn.1986), *aff'd at* 75 B.R. 1 (M.D.Tenn.1987); *cf.* Bankruptcy Rule 3020(d) ("Notwithstanding the entry of the order of confirmation, the court may enter all orders necessary to administer the estate.").

In the light of the prior orders in this case, this Court concludes that the causes of action against the co-trustees and the attorney defendants are in part core and in part related to the case or estate administration. If there were no jury demands, this Court would hear the proceeding, make final decisions in the core matters and enter recommended decisions in the related matters. The Court may have either ancillary or pendent jurisdiction as to related state law issues, even if the core matters were settled or dismissed. *See, e.g., In re Aerni*, 86 B.R. 203 (Bankr.D. Neb.1988); *In re Stardust Inn, Inc.*, 70 B.R. 888, 15 B.C.D. 770 (Bankr.Pa.1987); *cf., In re GWF Inv., Ltd.*, 85 B.R. 771, 780 (Bankr.S.D.Ohio 1988) ("No Congressional intent that bankruptcy jurisdiction should continue for matters not involving the enforcement of rights created by Title 11."). However, mere subject matter jurisdiction does not resolve the entire issue in this proceeding, and this examination has been necessary partially because of the jury demands, since the right to a jury trial may depend upon the nature of the proceeding.

### JURY TRIAL RIGHT [8]

An initial glimpse of this proceeding would seem to present an example of perhaps an isolated core proceeding where a jury right might exist—a suit against a trustee for common law negligence in performance of trustee acts. In addition, the fact that the parties stipulated to this Court's conducting a jury trial would seem to make the Court's inquiry unnecessary. However, the parties may not confer, nor is

---

**8.** This Court will not attempt an exhaustive review of the many opinions of bankruptcy and other courts affecting jury trials. The Court hopes to avoid "substituting case citations for ... thinking." *In re Brady*, 86 B.R. 166, 171 n. 7 (Bankr.D.Minn.1988).

the Court required to accept, jurisdictional authority which does not exist. *See generally*, Wright, *Law of Federal Courts*, chapter 2 (4th Ed.1983). It certainly may be argued that if the parties consent to a jury trial, no harm results from a bankruptcy court's conducting such a trial. However, "the fact that one party consents to a jury trial demanded by the adverse party is irrelevant to the issue of whether a *right* to a jury verdict exists." *In re Bailey*, 75 B.R. 314, 317 (M.D.Tenn.1987). As the *Bailey* Court pointed out, the use of a jury when one is not warranted may result in the jury verdict being merely an advisory one. *Id.* at 317. The plain language of 28 U.S.C. Section 157(b)(1) and (c)(1) indicates that Congress authorized bankruptcy judges to hear bankruptcy proceedings, not juries. Congress, for example, could have used the term "court" rather than "judge" which would lend itself more easily to an argument for jury trials.

And, of course, these parties did not consent to an absolute right to jury trial without appeal. They preserved their right to appeal "errors in the trial" which would include errors in jury selection, charge and other jury matters. If this Court lacks the authority to conduct any jury trial and yet proceeds to conduct this one, error would be automatic. It would be a waste of judicial and litigants' time and energy to conduct a jury trial, only to place the District Court in the position of conducting again the jury trial. Here, the Court is not addressing whether the first jury was merely advisory. *See, e.g., In re Crabtree*, 55 B.R. 130, 133 (Bankr.E.D.Tenn.1985). Rather, the Court is concerned that no statutory authority exists upon which the Court may conduct even a consensual jury trial.

The reality is that there is no statutory right to a jury trial in bankruptcy proceedings except for those limited areas provided for under 28 U.S.C. Section 1411:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

28 U.S.C. Section 959(a) does not grant an independent right for jury trial in suits against trustees; it merely preserves those rights that may otherwise exist. The same is true, for example, of Bankruptcy Rule 9020(d) in reference contempt proceedings and Bankruptcy Rule 7055, incorporating Federal Rule of Civil Procedure 55(b)(2) on default judgment hearings. The simple fact is that jury trials are statutorily authorized only in personal injury or wrongful death claims and possibly in 11 U.S.C. Section 303 issues. 28 U.S.C. Section 1411; *see, e.g., Matter of Hendon Pools of Michigan, Inc.*, 57 B.R. 801, 802 (E.D.Mich.1986).

The absence of statutory authority does not deprive a litigant to a jury trial right if that right is Constitutionally guaranteed under the Seventh Amendment. *In re Beugen*, 81 B.R. 994, 997 (Bankr.N.D.Cal. 1988). But, presence of a Constitutional right to jury trial does not then equate to the ability of the bankruptcy court to conduct that trial—it simply means that the bankruptcy court will need to determine if such a right exists. The litigants would then resort to another appropriate court— either state court or federal—for the jury trial. This Court is persuaded that one may have a Constitutional right to a jury trial but the Constitution does not specify the forum. "[A]ny rights to a jury trial in the bankruptcy court are not constitutional in origin but must be created by statute." *In re D.H. Overmyer Telecasting Co., Inc.*, 53 B.R. 963, 979 (N.D.Ohio 1984). Even in the Section 1411(a) jury issues, the bankruptcy court is not authorized to conduct the jury trial. 28 U.S.C. Section 157(b)(5). Rather, personal injury and wrongful death actions are tried in the federal district court, which is "a court of law, and not only a court of equity." King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," *supra* at 704.

This Court does not lack the desire to conduct a jury trial nor does the Court wish to tax the parties with the burden of finding another court. The parties are entitled

to a prompt trial but one in the proper court. This Court has not been persuaded that there is an inherent jury trial power in the bankruptcy court. Inherent power connotes essential power. Unlike such arguably necessary judicial powers as contempt or sanction,[9] this Court does not need jury trial authority.

There are practical reasons why jury trials are not compatible with this Court's normal judicial activity. The Court does not suggest that it is too busy to conduct jury trials, but jury trials are, by nature, more time consuming then bench trials, and one could conclude that the Court's docket and case pace demands do not accommodate jury trials. *In re Southern Industrial Banking Corp.*, 66 B.R. 370, 375, 15 B.C.D. 249 (Bankr.E.D.Tenn.1986), *quoting from In re Best Pack Seafood, Inc.*, 45 B.R. 194, 195 (Bankr.D.Me.1984). This Court is not "physically equipped nor staffed to" properly and efficiently handle jury panels and trials. *In re Astrocade*, 79 B.R. 983, 991, 16 B.C.D. 1306, 1312 (Bankr. S.D.Ohio 1987). The rapid pace of bankruptcy cases and proceedings do not mesh with jury procedures. "Congress enacted the Bankruptcy Code to provide a prompt resolution of all bankruptcy causes of action in order to expedite the settlement of the debtor's estate. Jury trials would 'dismember' the statutory scheme." *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1350 (11th Cir.1988), *cert. granted,* — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988). Taken in isolation, this adversary proceeding would not destroy this Court's functions. To permit jury trials as a general concept is another issue.

However, more importantly, the expertise of this Court does not fit easily into jury trials. This is a specialized court, and it is a court which historically and inherently is one of equity in nature. *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); *see generally*, King, "Jurisdiction and Procedure under the Bankruptcy Amendments of 1984," *supra* at 703–704. As such, the judicial experience of the bankruptcy court does not include juries. To permit the conducting of jury trials in the bankruptcy court on an occasional basis may breed trial error through judicial inexperience. It would seem that the bankruptcy court either needs to regularly conduct jury trials or to never conduct them.

Of the many courts which have considered the issues of bankruptcy jury trials, the results fall into at least the following categories [10]:

(a) whether a right to jury trial exists in core proceedings and, if so, whether the bankruptcy court is authorized to conduct such trials;

(b) whether a jury trial right exists or is authorized in related proceedings; and

(c) whether the bankruptcy court is authorized to conduct jury trials in any proceedings.

## JURY TRIAL IN CORE PROCEEDINGS

The rationale of many courts is that if the proceeding is core,

then there is automatically no right to a jury trial. The rationale is simply that Congress, in enacting the 1984 Amendment, intended that those proceedings designated as core proceedings would be ones which are within the traditional summary jurisdiction of the bankruptcy court and to which no jury trial right attached.

Hendel and Reinhardt, "Attempting to Define the Scope of Bankruptcy Court Juris-

**9.** *See, e.g., U.S. v. Revie*, 834 F.2d 1198, 1206, 17 C.B.C.2d 1446 (5th Cir.1987), *cert. denied, Revie v. U.S.,* — U.S. ——, 108 S.Ct. 2845, 101 L.Ed.2d 882 (1988) ("The statute does *not* say that bankruptcy judges may 'hear only' when told to do so by district court judges ... [T]he bankruptcy judge had authority to hear a [contempt] proceeding related to the case. Few functions are more essential to conducting a court then maintaining order and enforcing attendance."); *contra, In re Sequoia Auto Brokers*, 827 F.2d 1281,

1291, 17 C.B.C.2d 622, 16 B.C.D. 826 (9th Cir. 1987) (Holding that no statutory authority, express or implied, existed to permit a bankruptcy judge to issue contempt orders.)

**10.** "The right to jury trials in bankruptcy proceedings is a complex issue and is a subject fostering divergent views." *Matter of McLouth Steel Corp.*, 55 B.R. 357, 358, 14 C.B.C.2d 22 (E.D.Mich.1985)

diction: No Miracle Drugs for the Patient," *supra* at 357, *citing In re Mansker,* 60 B.R. 803, 806 (Bankr.D.Mass 1986); *In re Baldwin United Corp.,* 48 B.R. 49, 56, 12 C.B.C.2d 378, 12 B.C.D. 913 (Bankr.S.D. Ohio 1985). These classes of cases often refer to *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966), for authority that bankruptcy courts are "essentially courts of equity, [which] characteristically proceed in summary fashion to deal with the assets of the bankrupt they are administering." *Katchen* is obviously a Bankruptcy Act case, one concerned still with the summary/plenary jurisdiction approach, but the Supreme Court noted that the Act "requires a jury in only limited situations." 382 U.S. at 331, 86 S.Ct. at 473. Under *Katchen,* at least in a preference action where a creditor had filed a claim in the bankruptcy case, the Bankruptcy Act converted the "creditor's legal claim into an equitable claim." 382 U.S. at 336, 86 S.Ct. at 476. Thus, in the factual situation found in *Katchen* no Seventh Amendment right to a jury trial existed.

That does not predetermine that a Constitutional right to jury could never exist, and the bankruptcy court will be required to examine traditional common law or statutory factors on a case by case basis to determine if there is a jury right in a given civil proceeding. *In re Beugen, supra* at 997. Nevertheless, the *Katchen* analysis is often utilized to justify a conclusion that an absolute right to jury trial does not "extend to cases of equity jurisdiction." 382 U.S. at 337, quoting from *Barton v. Barbour,* 14 Otto 126, 104 U.S. 126, 133–134, 26 L.Ed. 672 (1881).

▮ Following that rationale, it is logical to conclude as follows: Bankruptcy courts are courts of equity. Core proceedings are inherently equitable since they embrace the traditional powers of the court. Thus, jury trial rights do not exist in core proceedings. *See, e.g., In re Chase & Sanborn Corp., supra* at 1349; *In Matter of Baldwin United Corp., supra* at 56.

For example, this analysis has been used where the proceeding involves a "claim" against the estate. *See, e.g., In re Beugen,* *supra* at 997; *Bedford Computer Corp. v. Ginn Publishing, Inc.,* 63 B.R. 79, 14 C.B. D. 1071 (D.N.H.1986) (involving a state law claim). Further, no jury trial right has been found in a turnover proceeding. *See, e.g., In Matter of Baldwin United Corp., supra.* Also, no jury trial right exists in dischargeability determinations. *See, e.g., Matter of Merrill,* 594 F.2d 1064 (5th Cir. 1979); *Matter of Swope,* 466 F.2d 936 (7th Cir.1972), *cert. denied,* 409 U.S. 1114, 93 S.Ct. 929, 34 L.Ed.2d 697; *Transport Indemnity Co. v. Hofer Truck Sales,* 339 F.Supp. 247 (D.Kan.1971); *In re Frantz,* 82 B.R. 835 (Bankr.S.D.Tex.1988); *In re Bailey,* 75 B.R. 314 (Bankr.M.D.Tenn.1987). None exists in Section 549 post-petition transactions proceedings. *See, e.g., In re Global International Airways Corp.,* 81 B.R. 541 (W.D.Mo.1988). None exists in fraudulent conveyance or preferential transfer actions. *See, e.g., In re Chase & Sanborn Corp., supra; In re Southern Industrial Banking Corp.,* 70 B.R. 196 (E.D.Tenn.1986); *Matter of Henden Pools of Michigan, Inc., supra; Matter of McLouth Steel Corp., supra; In re Country Junction, Inc.,* 41 B.R. 425 (W.D.Tex. 1984), *aff'd* at 798 F.2d 1410 (5th Cir.1986).

The Fourth Circuit has recently observed in a voidable transfer scenario:

It is true that in determining seventh amendment rights we examine issues rather than cases. *Ross v. Bernhard,* 396 U.S. [531] at 538, 90 S.Ct. [733] at 738 [1970]. Here, however, the issues we examine relate to the restructuring of the debtor-creditor relationship in bankruptcy. American courts have held core bankruptcy proceedings to be equitable from the beginning of our system of bankruptcy. Now, Congress also has determined that actions such as the trustee's in this case are core bankruptcy proceedings requiring summary disposition by a bankruptcy judge. As such, they assume the historical equitable posture of all such bankruptcy proceedings, and the litigants involved in these actions have no seventh amendment right to a trial by jury.

*In re Harbour,* 840 F.2d 1165, 1178 (4th Cir.1988).

The Ninth Circuit has also held, after an examination of the issues "to be tried rather than the character of the overall action" and adopting the "law/equity test," that an action in equity did not entitle a party to a jury trial. *American Universal Insurance Co. v. Pugh,* 821 F.2d 1352, 1355 (9th Cir.1987).

Some courts have determined the jury rights in core proceedings on the distinction of whether the requesting litigant has previously filed a proof of claim. If so, the claim becomes equitable. If not, the cause of action may remain a legal one, thus entitling the litigant to a jury trial. *See, e.g., In re Silver Mill Frozen Foods, Inc.,* 80 B.R. 848, 16 B.C.D. 601, 17 C.B.C.2d 856 (Bankr.W.D.Mich.1987). As some courts have concluded,

> "classification of a matter as a core proceeding does not eliminate a litigant's constitutional right to a jury trial. [T]he court is still required to determine whether the action is one at law or lies in equity in deciding the right to a jury trial."

*Matter of Kenval Marketing Corp.,* 65 B.R. 548, 553, 15 B.C.D. 725 (E.D.Penn. 1986); *see also, In re Globe Parcel Service, Inc.,* 75 B.R. 381, 383 (E.D.Penn.1987). However, other authority asserts that the "mere advent of a bankruptcy case has deprived a party of a right to jury trial that otherwise would have existed." King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984" *supra* at 708. If this were solely a core proceeding, this Court could conclude that no jury right existed.

## JURY TRIAL IN RELATED PROCEEDINGS

■ If a litigant does validly possess a Seventh Amendment or state law right to jury trial in a related proceeding, the existence of a bankruptcy case should not abrogate that right. Nevertheless, "the jurisdictional provision for non-core proceedings by its terms envisions a bench trial rather than a trial by jury." *Pied Piper Casuals, Inc. v. Insurance Company of State of Pennsylvania,* 72 B.R. 156, 159–160 (S.D. N.Y.1987), *citing,* 28 U.S.C. Section 157(c)(1); *see also,* King, "Jurisdiction and Procedure under the Bankruptcy Amendments of 1984," *supra* at 705. Because of this statutory language and taking into account the nature of related proceedings, this Court agrees with Bankruptcy Judge Donald E. Calhoun, Jr., who observed, "that it makes no practical sense to have a jury trial in bankruptcy court in a non-core proceeding." *In re Astrocade, Inc., supra,* 79 B.R. at 991, 16 B.C.D. at 1312. Certainly, this is so if one adopts the theory that a non-core jury verdict is merely advisory. Just as the Constitution may protect a jury right, the Seventh Amendment "prohibits any reexamination of facts tried by a jury, except as permitted at common law." *In re American Community Services, Inc.,* 86 B.R. 681, 689 (D.Utah 1988).[11] Even though the Utah District Court concludes that a bankruptcy court may conduct a jury trial when the parties consent, that Court recognized that the Seventh Amendment would prohibit the district court from reconducting a second jury trial or a *de novo* review of the jury verdict. *Id.*

Reserving the issue of consent, if a bankruptcy court may not conduct jury trials and yet a jury trial right exists, the answer of course is simple and offers two options —withdrawal of the reference and abstention. The reference may be withdrawn when a legitimate jury right exists to permit the district court to conduct that trial. *Pied Piper Casuals, Inc., supra* at 160. Section 157(d) of Title 28 provides that

> [t]he district court may withdraw in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

Withdrawal of the reference could certainly be instituted by the *sua sponte* recommendation of the bankruptcy judge, if that

---

11. U.S. Constitution Amend. 7: In suits at common law, ... the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

judge concluded that a jury right existed in a related proceeding. *See, e.g., In re Astrocade, Inc., supra* at 991.

After withdrawal of the reference, the district court is not compelled to conduct a jury trial. Rather, in appropriate proceedings, that court may abstain to permit a state court to conduct a jury trial. 28 U.S.C. Section 1334(c). Some bankruptcy courts have severed core issues from purely state law issues and then abstained from hearing the non-core issues. *See, e.g., In re Manufacturers Acceptance Corp.,* 82 B.R. 155, 17 B.C.D. 126 (Bankr.S.D.Fla. 1988). That approach might be taken by a district court to preserve a litigant's state law jury right if such is found.

### No Jury Authority in Core or Non–Core Proceedings

Over-riding the concerns for jury trial rights in core or non-core proceedings, this Court has concluded that its ability to grant and conduct a jury trial is not an issue of subject matter or *in personam* jurisdiction; rather, it is an issue of judicial procedural authority. One lesson from *Marathon* is that the bankruptcy court may have broad jurisdiction but it is not unlimited in its use thereof. As previously discussed, denial of a jury trial in this Court does not deprive these litigants of a jury trial in the District Court or in state court. This Court simply believes it is not authorized by Congress, nor does it need to creatively find authority, to conduct jury trials. *In re Brown,* 56 B.R. 487, 490 (Bankr.D.Md.) (Bankruptcy Court is "powerless to conduct jury trial.") The Supreme Court recently observed that the equity powers of the bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code." *Northwest Bank Worthington v. Ahlers,* —— U.S. ——, 108 S.Ct. 963, 968–969, 99 L.Ed. 2d 169 (1988); *see also In re Edson,* 86 B.R. 141, 144 (Bankr.E.D.Wisc.1988) ("The bankruptcy court must be careful not to create new substantive rights under the guise of its equity powers.") Surely, if our equity power is so limited, the Bankruptcy Code and Title 28 also set some confines of how this Court may exercise its authority.

One argument for jury trials is that "when a matter is referred to the bankruptcy court, the court, by virtue of the reference, is vested with the same authority to conduct a jury trial as would exist in district court." Hendel and Reinhardt, "Attempting to Define the Scope of Bankruptcy Court Jurisdiction," *supra,* at 359, *citing e.g., In re Rodgers & Sons, Inc.,* 48 B.R. 683, 687, 12 B.C.D. 1255 (Bankr.E.D. Ohio 1985). However, that argument does not sufficiently address the fact that the bankruptcy courts are units of the district court, rather than the equivalents of the district court. 28 U.S.C. Section 151. In the final analysis, this Court has questioned why it, as a unit of the district court, should conduct a jury trial and has concluded that no need exists for it to conduct such proceedings nor does any authority exist. *See, e.g., In re Smith,* 84 B.R. 175, 178, 17 B.C.D. 594 (Bankr.D.Ariz.1988). Congress may certainly authorize jury trials, but this Court should not broaden the statutory authority it does possess beyond the Congressional and *Marathon* limits placed upon the Court.

As Professor Lawrence P. King has discussed, former 28 U.S.C. Section 1480 had "contained a broad right of trial by jury in bankruptcy cases." King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," *supra* at 702. That statute, coupled with the "pervasive jurisdiction granted to that court in [former] section 1471(c)," gave rise to a comfortable conclusion that the court could conduct some jury trials. *Id.* at 703. However, the repeal of Section 1480 along with the limits in present 1411 of Title 28, leads to a conclusion consistent with this Court's discussion that the right to trial by jury in the bankruptcy court no longer exists. "[S]ection 1411(a) would be totally redundant if the right to jury trial continued to exist in other types of disputes." *Id.* at 706–707. *See, e.g. In re Clark,* 75 B.R. 337, 340 (N.D.Ala.1987). The Emergency Rule, which preceded and is structurally similar to the present reference procedure specifically prohibited a bankruptcy judge from conducting jury trials. Revised Emergen-

cy Rule (d)(1)(D); *see, In re Astrocade, Inc., supra,* 79 B.R. at 991, 16 B.C.D. at 1312.

Many opinions holding that the bankruptcy court may conduct jury trials relied in part on former Bankruptcy Rule 9015. *See, e.g., Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963, 967 (D.N.J.1987); *In re Lombard–Wall, Inc.,* 48 B.R. 986, 992, 13 C.B.C.2d 492, 13 B.C.D. 678 (S.D.N. Y.1985); *Nashville City Bank & Trust Co. v. Armstrong, (In re River Transportation Co.),* 35 B.R. 556, 559, 9 C.B.C.2d 986, 11 B.C.D. 300 (Bankr.M.D.Tenn.1983). However, Rule 9015 has now been abrogated effective August 1, 1987, and the advisory comment is cursory.[12] The amended rules are applicable to this adversary proceeding which was filed after the effective date. This abrogation at least makes it doubtful that any "mechanism by which a bankruptcy court may have conducted a jury trial" now exists. *In re Chase & Sanborn Corp., supra* at 1350 n. 16.

It has been suggested that the elimination of Rule 9015 should not "infer that such trial is not proper, but rather" should permit "case decision" to develop the jury issue. *In re Price–Watson Co.,* 66 B.R. 144, 159, 16 C.B.C.2d 1552, 15 B.C.D. 72 (Bankr.S.D.Tex.1986). That conclusion, taken from the Advisory Committee Note to the 1987 Rules, may not however presume, without foundation, that a jury right exists in the bankruptcy court.

Arguably, Congress could have clearly specified that the bankruptcy courts are *not* authorized to conduct jury trials. *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963, 967 (D.N.J.1987). It is a more compelling argument to this Court that Congress could easily have expressed its intention that the bankruptcy courts *were* authorized to conduct such trials. The absence of that positive expression and the presence of statutory language to the contrary, coupled with the *Marathon* limits placed on this Court's authority makes it clear to this Court that Congress did not authorize jury trials in the bankruptcy courts.

By analogy to the Magistrates Act, it may be argued that "[t]he ability to conduct a jury trial is not an exclusive function of an Article III court." *M & E Contractors, Inc. v. Kugler–Morris General Contractors, Inc.,* 67 B.R. 260, 266 (N.D.Tex. 1986); *see also In re American Community Services, Inc., supra* (Holding that bankruptcy judges may conduct jury trials in non-core proceedings *only* if the parties so *consent.*). This Court is not, however, saying that only Article III judges may conduct jury trials. Obviously, that is not true as evidenced by the multitude of state court jury trials. This Court does suggest that the statutory authority for consensual jury trials before a magistrate is significant to the extent that it evidences Congressional ability to authorize non-Article III courts to conduct jury trials. The absence of a similar statute for bankruptcy courts is equally significant. "[T]here is no authorization in Title 11 or Title 28 for bankruptcy judges to conduct jury trials" as there is in Title 28 for magistrates. King, "Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984," *supra,* at 704.

The method of appointment, jurisdiction, and powers of the United States magistrates are proscribed by statute and are unique from those attributes of the bankruptcy court. 28 U.S.C. Section 636. One of the specific statutory provisions permits the magistrate to "conduct any or all proceedings in a jury or non-jury civil matter," upon consent of the parties and when "specially designated to exercise such jurisdiction by the district court." 28 U.S.C. Section 636(c)(1). The District Court for the Western District of Tennessee has not "specially designated" this Court to hear jury trials and no underlying statutory authority exists for such designation. This in itself is enough to give this Court opportu-

---

**12.** The Advisory Committee Note provides, in part: "In the event the courts of appeals or the Supreme Court define a right to jury trial in any bankruptcy matters, a local rule in substantially the form of Rule 9015 can be adopted pending amendment of these rules." *Norton Bankruptcy Law & Practice Rule* 9015 (1987–88 Ed.)

nity to doubt its need to conduct this or any other jury trial.

Further, in the event of designation by the district court of jury authority to a magistrate, upon entry of a judgment, appeal is directly to the United States Court of Appeals "in the same manner as an appeal from any other judgment of a district court." 28 U.S.C. Section 636(c)(3). By contrast, appeal from the bankruptcy courts in this Circuit is to the district court. 28 U.S.C. Section 158(a); Bankruptcy Rule 8001(a). This distinction bolsters the conclusion that Congress did not express an intention for the bankruptcy courts to conduct such jury trials. As the District Court in Utah pointed out, a potential *de novo* review by a district court clashes with the Constitutional finality of jury factual findings. *In Re American Community Services, Inc., supra,* at 689. It may be logically argued that a bankruptcy jury verdict would be merged into the judgment entered by the bankruptcy judge and that no conflict with Title 28 results. This Court appreciates such logic for justifying jury trials, but doubt lingers.

## CONCLUSION

■ This Court has concluded that there is no statutory procedural authority for the bankruptcy court to conduct jury trials even if there is consent. *See generally,* Sabino, "Jury Trials in the Bankruptcy Court: The Controversy Ends," 93 *Com. L.J.* 238 (Summer 1988) (For a recent discussion of the abrogation of Bankruptcy Rule 9015.); *cf., In re American Community Services, Inc., supra* at 688. The Court is well aware of cases reaching another conclusion. *See, e.g., In re American Community Services, Inc., supra* at 668, *citing, In re McCormick,* 67 B.R. 838, 842, 15 B.C.D. 743 (D.Nev.1986); *In re Crabtree,* 55 B.R. 130, 133 (Bankr.E.D. Tenn.1985); *In re Arnold Print Works, Inc.,* 54 B.R. 562, 569, 13 B.C.D. 883 (Bankr.D.Mass.1985), *aff'd in part, rev'd in part* at 61 B.R. 520 (D.Mass.), *judgment vacated* at 815 F.2d 165 (1st Cir.1987); *In re Northern Design, Inc.,* 53 B.R. 25, 27 (Bankr.D.Vt.1985) (Which found the district court "better equipped to conduct such a jury trial."); *In re Mauldin,* 52 B.R. 838, 843, 13 B.C.D. 603 (Bankr.N.D.Miss.1985). Merely because the reference procedure for non-core proceedings under 28 U.S.C. Section 157(c)(2) is conceptually similar to the procedure of the Federal Magistrates Act does not lead to a firm conclusion that "bankruptcy judges can constitutionally conduct jury trials in non-core proceedings with the consent of the parties." *In re American Community Services, Inc., supra* at 690. That conclusion is logical yet lacking in completeness. This Court is persuaded that Congress must provide a statutory procedure, similar to that for magistrates, to instill jury authority in the bankruptcy court. Without that authorization, this court is forced to conclude that it is not vested with authority to conduct a jury procedure which is inherently unnecessary to the function of the bankruptcy court. To engraft jury authority on these courts, without statutory safeguards, will invite Constitutional clashes, for example, between jury verdicts and the present appeal procedures. Such clashes are not necessary if bankruptcy court jury trials are not necessary. The existence of jury trials in either the district court or state court acts as a protection for any Constitutional or statutory right to jury trial; therefore, no Constitution deprivation results from this Court's ruling. *See, e.g. In re Frantz,* 82 B.R. 835, 837 (Bankr.S.D.Tex 1988) (Reserving "plaintiff's jury rights in the proper forum."). Until Congress alters the statutory scheme, this Court prefers to merely deprive the litigants of this forum rather than to err by improperly granting a jury trial when the trial appears to be jurisdictionally unjustified.

THEREFORE, the Court recommends that the District Court for the Western District of Tennessee, Western Division, pursuant to 28 U.S.C. Section 157(d) withdraw this adversary proceedings number 87–0208 from the reference to this Court, to permit the plaintiff to have a jury trial on the common law negligence issues presented in the complaint. A withdrawal of reference by the District Court would not be prejudicial to the parties, since dis-

covery is still on-going, and the proceeding is not yet set for trial. *See, In re American Community Services, Inc., supra* at 685, *citing, White Motor Corp. v. Citi-Bank, N.A.*, 704 F.2d 254 (6th Cir.1983).

Since this Court has determined that at least some of the alleged causes of action are non-core, and bifurcation of the causes of the action is not feasible, the District Court may determine whether the trial should be conducted in the federal court or in an appropriate state court. *cf.* 28 U.S.C. Section 1409(e).

Pursuant to the procedure for withdrawal in Bankruptcy Rule 5011, the District Court may act *sua sponte* to withdraw the reference. *See, In re American Community Services, Inc., supra.* In the alternative, any party to this proceeding may move the District Court to withdraw the proceeding. Bankruptcy Rule 5011(a). This Court's recommendation will be mailed to counsel for all parties and to the District Court Clerk. This Court abstains *sua sponte* from further action in this proceeding, pending orders from the District Court. *See* 28 U.S.C. Section 1334(c)(1).